RALPH PERKINS AND KATHARINE H. PERKINS, (HUSBAND AND WIFE), PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

KATHARINE H. PERKINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

RALPH PERKINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 96124, 96125, 96126.   Promulgated May 24, 1940.

*Henry M. Groves, C. P. A.,* for the petitioners.

*DeWitt M. Evans, Esq.,* and *Thos. F. Callahan, Esq.,* for the respondent.

OPINION.

OPPER: These proceedings, consolidated for hearing and consideration, were brought for a redetermination of deficiencies in income tax as follows:

| Petitioner | Docket No. | Year | Deficiency |
|---|---|---|---|
| Ralph Perkins and Katharine H. Perkins | 96124 | 1934 | $3, 254. 97 |
| Katharine H. Perkins | 96125 | 1935 | 1, 624. 76 |
| Do. | 96125 | 1936 | 4, 531. 15 |
| Ralph Perkins | 96126 | 1935 | 915. 12 |
| Do. | 96126 | 1936 | 3, 076. 13 |

A question relating to certain accounting and bookkeeping expenses for the years 1935 and 1936 in Docket No. 96126 being apparently conceded by petitioner, the questions remaining for decision are as follows:

I. Whether the proper basis for computing depreciation of property acquired by gift is cost to the donor, or fair market value on the date of gift.

II. Whether insurance policies surrendered for cash, in accordance with a tender made by the issuing company, constituted a sale or exchange.

III. Whether petitioners in Docket No. 96124 are entitled to a total loss for the taxable year of an investment by Ralph Perkins in the sum of $17,250 in the Fourteenth Carnegie Co.

IV. Whether the loss sustained on certain bank deposits which were sold during the year gives rise to a deduction for a bad debt or is a capital loss.

V. Whether petitioner in Docket No. 96126 sustained a loss in the sum of $13,963.50 on the sale of second preferred and common stock of The Hill Clutch Machine & Foundry Co.

The above issues and the respective findings thereon will be independently considered hereinafter.

## First Issue.

The facts are stipulated and are found accordingly. Two pieces of real property are involved, the controversy being the same as to each. One was received by petitioner as part of a gift from her father on July 29, 1932. On that date the father's cost of these buildings was $103,-733.29. Their fair market value was $20,000. On August 23, 1935, petitioner received the other parcel as a gift from her mother, to whom the cost of buildings on that date was $25,750, the fair market value being $5,954. Both parcels had been used by the donors for pleasure and no depreciation thereon had been allowed or allowable to them. They have been operated by petitioner for profit since acquistion. The remaining useful life is stipulated in each instance. Petitioner has claimed depreciation and the only question is whether for that purpose cost to the donor or fair market value on the date of gift is the proper basis.

Section 114 (a), Revenue Act of 1934,[1] prescribes that the basis for depreciation shall be the adjusted basis set forth in section 113 (b) [2] for the purpose of determining the gain upon sale. The adjustments called for by that section being inapplicable, we are referred thereby to 113 (a) [3] for the unadjusted basis which, in the case of gifts after December 31, 1920, provides that "the basis shall be the same as it would be in the hands of the donor." Petitioner contends that these sections are conclusive and that, since the donor's basis for purposes. of computing gain would be his cost, petitioner's basis for depreciation must be the same.

---

[1] SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

(a) BASIS FOR DEPRECIATION.—The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 113 (b) for the purpose of determining the gain upon the sale or other disposition of such property.

[2] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(b) ADJUSTED BASIS.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

[3] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(2) GIFTS AFTER DECEMBER 31, 1920.—If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift, except that for the purpose of determining loss the basis shall be the basis so determined or the fair market value of the property at the time of the gift, whichever is lower. &ast; &ast; &ast;

We are unable to dispose of the question in such simple terms. Petitioner's donors could make a similar argument if they had converted the property to business uses, because the unadjusted basis of property is ordinarily the cost, and their situation would not fall under any of the specified exceptions. Nevertheless, we know that where nonbusiness property is converted to a business use the loss is to be computed not upon the basis of cost but of fair market value on the date of conversion. *Heiner* v. *Tindle*, 276 U. S. 582. This is also the proper basis for depreciation under similar circumstances. *Charles J. Thatcher*, 24 B. T. A. 1130. When, therefore, the statute speaks as in 113 (a) (2) of the donee's basis as being the same as that of the donor it seems necessary to infer that, since the donor would take as his basis for depreciation the fair market value at the time of conversion, so must the donee. The fact that this provision appears in the section relating to computation of gain and not in that relating to the basis for depreciation is without significance when we bear in mind that the latter section must be modified in instances where the property involved is converted to a business use. Even though the conversion took place at the moment of acquisition by this petitioner, it was nevertheless a conversion, since the property had no depreciation base before. See *Robert H. Montgomery*, 37 B. T. A. 232. No matter what her basis for gain or loss, her basis for depreciation is computed upon conversion value, just as it would be, irrespective of gain or loss basis, in the hands of her transferor. *Charles J. Thatcher, supra.*

Any other treatment creates a situation so anomalous as to seem obviously outside the legislative purpose. If petitioner's argument is sound, the same result would follow if the property had been converted to business purposes by the donor and thereafter transferred to petitioner. The donor's basis for gain would continue to be his cost, see *Deposit Trust & Savings Bank, Executor*, 11 B. T. A. 706, though for purposes of depreciation it would be conversion value. Nevertheless, upon the transfer to the donee the basis for depreciation would automatically transmute into the donor's basis for gain, for that is what petitioner's literal reading of the legislation would produce. And the same would be true if the conversion took place long after petitioner's acquisition. If these results are unwarranted, as we think there can be no doubt they are, the position urged by petitioner is only slightly less so. Respondent's computation of depreciation on the basis of fair market value at the time of acquisition must, we think, be approved, not because the acquisition is significant, but because that happens also to be the time of conversion.

## Second Issue.

The facts involved in this issue are stipulated. They are so found. The petitioner Ralph Perkins, referred to in the discussion of this issue as petitioner, received in 1929 by gift from his mother two tontine policies of insurance on his father's life, of which his mother had been the irrevocable assignee. Petitioner assigned the policies in 1931 as collateral security for a loan. In the present tax year, 1934, the creditor, with petitioner's consent, surrendered both policies for cash to the respective insurers and applied the proceeds to petitioner's indebtedness. The question is whether the stipulated gain of $9,119.68 was a capital gain or ordinary income.

The parties agree that the policies represented capital assets of petitioner. The controversy is whether the surrender was a sale or exchange. Revenue Act of 1934, sec. 17.

Upon first impression that question would seem to be disposed of by *George A. Hellman*, 33 B. T. A. 901, where the Board said:

* * * "The words 'sale or exchange' are ordinary words of well established meaning." They do not include the surrender of a life insurance or annuity contract wherein the insured receives a payment of an obligation according to the terms of the insurance policy.

Petitioner, however, urges the inapplicability of that decision, by reason of the concluding words in the quoted language, in that here the surrender was not the result of "the terms of the insurance policy." It is his position, not controverted by respondent, that at the time of surrender the policies had no specified cash or loan value and that the transaction "was in accordance with a tender made by the insuring company."

This variation in the facts seems to us insufficient to convert the present transaction into a sale or exchange and we do not read the language of the *Hellman* opinion as placing that emphasis upon the terms of the policy. Settlement with an obligor is not commonly considered a sale to him of his obligation. *Hale* v. *Helvering*, 85 Fed. (2d) 819 (App. D. C.). The settlement may be for a smaller amount than the face of the obligation and therefore obviously at variance with its terms without impairing that conclusion. *Hale* v. *Helvering, supra; James R. Stewart*, 39 B. T. A. 87. Similarly, the time when settlement is made may vary from the date when the obligation is unconditionally due. This follows from the principle that the redemption of a bond prior to maturity does not constitute a sale or exchange, *Fairbanks* v. *United States*, 306 U. S. 436; *John H. Watson, Jr.*, 27 B. T. A. 463. Consequently, the mere absence of a term in the agreement sanctioning the settlement seems inadequate to justify treating it as a sale. These obligations, in our view, were surrendered to the obligor as effectively as though provision

for such surrender—either at the obligor's option, as in the case of bonds called for prepayment, or at the option of the obligee, as in the case of insurance policies possessing cash surrender values—were expressed in the instruments themselves.

There is additional authority for this result in section 117 (f), Revenue Act of 1934.[4] The characterization there of the redemption of certain specified evidences of indebtedness as "exchanges", and the failure to include such obligations as those involved here, is persuasive evidence that it was not intended to treat the surrender of insurance policies as sales or exchanges for the purpose of applying the capital gains provisions. *Avery* v. *Commissioner* (C. C. A., 9th Cir.), 111 Fed. (2d) 19. We conclude that the payments of petitioner's policies were not sales or exchanges and that the gain resulting therefrom was ordinary income.

## Third Issue.

The principal facts pertaining to this issue were stipulated and are hereby found accordingly. They show that the Fourteenth Carnegie Co. was incorporated under the laws of Ohio on December 28, 1927, commencing business as of January 1, 1928; that petitioner Ralph Perkins, referred to in this issue as petitioner, owned one-half of its capital stock at a cost of $250; that the books of account of the corporation as of December 31, 1934, show an account payable to petitioner in the sum of $17,306.27; that the balance sheets and operating statements of the corporation show deficits for each of the years 1930 through 1936, the assets as at December 23, 1936, being $87,351.06, with a capital deficit of $62,160.84; and that on the latter date a voluntary petition in bankruptcy was filed by the corporation, which was finally adjudicated a bankrupt on January 7, 1938.

In addition to the foregoing we find from the testimony that petitioner and the other owner of the corporation's capital stock agreed at the time of its organization that additional capital would be required by the corporation, which would be contributed by them on an equal basis, and that between December 28, 1927, and January 1, 1934, petitioner had contributed additional capital in the sum of $17,000; that during the calendar year 1936, the secretary of the corporation ascertained that its principal tenant would not renew

---

[4] SEC. 117. CAPITAL GAINS AND LOSSES.

\* \* \* \* \* \* \*

(f) RETIREMENT OF BONDS, ETC.—For the purposes of this title, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor.

its lease and that, since it would be difficult to secure an adequate rental for the property, the corporation should file a bankruptcy petition; and that the corporation filed a state franchise tax return for the calendar year 1936 and a Federal capital stock tax return for the fiscal year ending June 30, 1936, and paid the former tax.

Petitioner claimed a deduction on account of the investment represented by these transactions for both 1934 and 1936. The issue, however, is materially clarified by concessions in the briefs of both parties. Petitioner "makes no claim to this deduction as a bad debt loss for any year. Furthermore, the petitioner abandons his claim that this investment became worthless prior to the calendar year 1936." (Petitioner's reply brief.) Respondent, on the other hand, appears to have no serious concern over treatment of the item as "capital investment",[5] but contends that no identifiable event has been shown warranting the deduction as a loss and that, if the situation is to be treated as a complete liquidation of the corporation, the distribution thereon is not shown to have occurred, and the deduction must be limited when allowable by the provisions of section 117, Revenue Act of 1936.

The evidence seems to us to warrant the conclusion that two identifiable events sufficient to indicate worthlessness of petitioner's capital investment took place in the taxable year 1936. The first was the loss of the corporation's tenant. The critical nature of this development was demonstrated by the subsequent filing of a voluntary petition in bankruptcy, which might also be treated as an identifiable event. See *William L. Taylor*, 37 B. T. A. 1055. If the latter were the only evidence appearing, so that petitioner's claim of worthlessness would be supported solely by bankruptcy and ultimate liquidation, it might be necessary to pass upon respondent's alternative contention that petitioner's loss resulted from a corporate liquidation, and that under the provisions of section 115 (c) it would be subject to the capital loss limitations of section 117. See *White v. United States*, 305 U. S. 281; *Helvering v. Weaver Co.*, 305 U. S. 293. Here, however, petitioner's claim of worthlessness being adequately supported by the independent event consisting of the loss of petitioner's principal asset, his contention that the stock was worthless prior to and separate from the bankruptcy is sufficient to eliminate the necessity of considering that point. But cf. *Edith M. Greenwood*, 41 B. T. A. 664. A loss predicated upon the worthlessness of stock may be allowed independent of the occurrence of any sale or ex-

---

[5] "While the stipulation of facts and exhibits attached thereto state and show that the item in dispute was shown on the records of the Fourteenth Carnegie Co. as 'accounts payable—Ralph Perkins' it would seem in view of the testimony of the petitioner that perhaps the item in question may be considered as a capital investment." [Respondent's brief.]

change. *De Loss* v. *Commissioner*, 28 Fed. (2d) 803 (C. C. A., 2d Cir.). We see no reason why it may not also be allowed independent of any liquidation. Respondent's determination on this issue is overruled.

*Fourth Issue.*

The facts involving this issue, as stipulated by the parties, are hereby found. They are to the general effect that the petitioner, Katharine H. Perkins, referred to in the discussion of this issue as the petitioner, had deposits in two closed or liquidating banks of $2,317.24 and $296.18, which on January 1, 1936, had been held some three and five years, respectively, on which no payment was made during the tax year 1936, and on which the aggregate loss incurred by her in the tax year was $2,202.56, that amount being claimed as a bad debt in petitioner's income tax return for that year.

We also find from evidence submitted at the hearing that during 1936 petitioner instructed her husband, Ralph Perkins, to attend to taking a loss in 1936 on such deposits and that he sold the larger claim on December 10 of that year for $407.90 and the smaller claim on December 31 for $2.96. Petitioner kept books of account and the difference between these amounts and the face of the deposits was charged off on her books to profit and loss as of December 31, 1936.

There being no question of petitioner's loss or its amount, the parties are in dispute solely as to whether it may be taken as a deduction for a bad debt or must be considered a capital loss subject to the limitations contained in Revenue Act of 1936, section 117.

Debts partially or totally worthless may, of course, be written off, Revenue Act of 1936, section 23 (k). But there seems little doubt that in the alternative they may be sold or exchanged. *Austin Corbin, 2d*, 39 B. T. A. 1163; *McClain* v. *Commissioner* (C. C. A., 5th Cir.), 110 Fed. (2d) 878; *Edith M. Greenwood*, 41 B. T. A. 664. There is no reason to assume that a chose in action such as a bank deposit may not be disposed of by sale in the same manner as any other debt, and the evidence is clear that that is in fact what was done with the claims in this proceeding. Debts must be considered property, see *Twin Ports Bridge Co.*, 27 B. T. A. 346, 355, and these obligations do not fall within any of the exceptions to the definition of capital assets contained in section 117.

It seems to us to follow that petitioner is limited by the capital loss provisions. It is, in fact, only the sale that entitles her to take a deduction for any loss whatever, for no other evidence of the uncollectibility of the indebtedness has been produced. We are, therefore, unable to make that independent determination of worthlessness which it is incumbent upon the taxpayer to permit us to do. *Higginbotham-Bailey-Logan Co.*, 8 B. T. A. 566. Mere evidence of mar-

ket value is insufficient for that purpose, *Ruth Wight Bill*, 38 B. T. A. 796; see *West End Pottery Co.*, 7 B. T. A. 927. Moreover, after the sale "there was no bad debt left to be charged off." *McClain* v. *Commissioner, supra.*

Such cases as *James R. Stewart*, 39 B. T. A. 87, and *Charles T. Carlson*, 39 B. T. A. 185, are clearly irrelevant. There the disposition of the indebtedness took the form of a settlement with the obligor. The question was whether that constituted a "sale or exchange," and on the authority of *Hale* v. *Helvering*, 85 Fed. (2d) 819, the Board determined that it did not. And see discussion of the second issue, *supra.* Here, however, there appears to be no question that the disposition of petitioner's claims was by way of sale to a third person, and we have no leeway to construe the transaction otherwise. Respondent's determination in this respect was correct.

## Fifth Issue.

The stipulated facts on this issue are hereby found accordingly. They are in substance as follows: Ralph Perkins, in this issue referred to as petitioner, on July 25, 1935, sold to A. C. McDaniel 750 shares of second preferred stock and 375 shares of no par value common stock of The Hill Clutch Machine & Foundry Co., an Ohio corporation, for a price of $18,750. Petitioner acquired the stock on May 24, 1932, by gift from his father, who had owned it since before March 1, 1913, at which date book value was second preferred, $87.06 a share; and no par common, no value.

From the record made at the hearing we find the following additional facts:

The above sale by the petitioner to McDaniel was the first sale ever made of the second preferred and no par common stock of the company. The book value of the second preferred stock of the company was $100 per share on June 30, 1932, as shown by the company's regular quarterly statement as of that date; the book value of the no par value common stock on this date was approximately $63.80 per share. June 30, 1932, was the date of the company's regular quarterly statements nearest to May 24, 1932.

Petitioner claimed a loss of $13,963.50 on the sale of the stock, which respondent disallowed "for lack of substantiation as to the basis of the stock."

The sole ground relied upon by respondent in his brief for contesting the allowance of the claimed deduction is that "no statement of earnings of the company or other information which would tend to show what the fair market value of the stock was at the date of gift has been submitted. In view of the lack of evidence in this respect and the fact that the Commissioner's determination is prima

facie correct, respondent contends that the petitioner has failed to sustain his burden of proof in respect to this item."

Under the present circumstances petitioner's burden of proof was sufficiently discharged; "the book value of those [corporate] assets is some evidence of their actual value sufficient to shift the burden of going forward to respondent." *B. F. Edwards*, 39 B. T. A. 735, 737.

No point has been made by respondent that the basis used by petitioner in computing the loss claimed on his return was March 1, 1913, value rather than the donor's cost, which, under the amended provisions of the 1934 Act, appears to constitute the donor's basis for computing loss. Section 113 (a) (14). No cost basis to the donor has been shown, but we regard that as due to the implied concession that cost and March 1, 1913, value were identical. This must have been the theory upon which the case was presented, since respondent's counsel stated at the hearing: "The stipulation of substantially all the facts involved in all years has been agreed to." Omission of a fact so fundamental as the basis upon which petitioner's loss is to be computed would have been inconsistent with this statement, but it may be justified upon the assumption described above. On this issue the decision will be for petitioner.

*Decision will be entered under Rule 50.*