Eugene Reynal and Katherine B. Reynal, (Husband and Wife) v. Commissioner.
Reynal v. Commissioner
Docket No. 47362.
United States Tax Court
T.C. Memo 1955-78; 1955 Tax Ct. Memo LEXIS 265; 14 T.C.M. (CCH) 258; T.C.M. (RIA) 55078; March 31, 1955
*265 Vincent J. Malone, Esq., and Sidney D. Rosoff, Esq., for the petitioners. Richard G. Maloney, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined a deficiency of $10,142.52 in the income tax of petitioners for 1948. The issues presented are the correctness of the respondent's action (1) in determining that the petitioner, Eugene Reynal, is not entitled to a deduction for a business bad debt on account of two promissory notes, and (2) in determining that petitioner sustained a long-term capital loss on the disposition of the foregoing notes. By an amended answer, the respondent asserts, as an alternative, that if the petitioner in fact charged off part of the obligation as worthless prior to the sale of the notes, he is not entitled to any loss deduction whatever. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners filed their joint income tax return for 1948 with the collector for the third district of New York. Petitioner, Eugene Reynal, has been in the book publishing business since 1926. Over a period of 22 years, following 1926, he developed valuable *266 relationships with approximately 30 authors. The services performed by petitioner on behalf of an individual author included directing a book through all its initial stages of creation, preparing the manuscript for the press, overseeing the mechanical processes involved in publication, publicizing the book, and negotiating royalty contracts with the author. Petitioner was one of the organizers of Reynal & Hitchcock, Inc., a New York corporation, sometimes hereinafter referred to as Reynal. The corporation was organized in 1933 and engaged in the publishing business. Reynal's capitalization consisted of 1,100 shares of common stock of no par value and 1,500 shares of 6 per cent cumulative nonvoting preferred stock of a par value of $100 per share. Petitioner held the offices of chairman of the board of directors, secretary and treasurer. In August 1942, petitioner entered the Army Air Corps. Until that time Reynal had nearly broken even on operations. Crutice N. Hitchcock, president of the corporation, died in May 1946 and on July 1, 1946, petitioner resumed active participation in the business of Reynal in the capacity of president and treasurer. Upon his return, petitioner found *267 that the corporation had greatly expanded its operations during his absence. A number of authors whom Reynal had been assisting had produced books which were favorably received by the public. However, Curtice N. Hitchcock had suffered a heart attack in 1942 shortly after petitioner entered the military service and, as a result of his continued illness, a group of young men had taken over the management of the company. A number of new departments had been introduced which involved heavy expenses and caused nearly a threefold expansion in overhead. Petitioner found Reynal to be in need of funds and he made three loans to it of $50,000 each, one in November 1946, one February 1947 and one July 1947. At the time the loans were made petitioner received three interest-bearing promissory notes executed by Reynal in the amount of $50,000 each. The last two loans represented money borrowed by petitioner from the United States Trust Company. In March 1947, petitioner received from Reynal a note executed by T. E. Taylor in the amount of $5,000 to be credited against the amount of the loans which petitioner had made to that corporation. In August 1947 the notes which petitioner held were consolidated *268 into two interest-bearing notes, one for $100,000 and one for $45,000. The loans made by petitioner, however, solved only the immediate financial problems of the corporation. Because of the financial difficulties with which the company was faced, petitioner felt that he was confronted with the alternatives of placing the corporation in bankruptcy, recapitalizing the corporation with outside money, which would have caused petitioner to lose control of the company, or disposing of the business to another publishing firm. In late September, or early October 1947, Donald C. Brace, president of Harcourt, Brace and Co., Inc., sometimes hereinafter referred to as Harcourt, initiated conversations with petitioner with a view to acquiring the business of Reynal. Subsequently, on December 16, 1947, the board of directors of Harcourt authorized Brace to conclude negotiations with petitioner and to acquire either the stock or the assets of Reynal on behalf of Harcourt. Thereafter, petitioner and Brace had frequent discussions concerning Harcourt's purchase of petitioner's stock in Reynal and his two notes, totaling $145,000. As a basis for their discussions, the parties used first a tentative *269 balance sheet of Reynal as of November 30, 1947, and, after December 22, 1947, a final balance sheet as of November 30, 1947, prepared by the company's auditors. In December 1947 petitioner acquired from C.N. Hand, Barklie Henry and the Estate of Curtice Hitchcock the common and preferred stock in Reynal in order to conclude the sale of all of Reynal's stock to Harcourt. In making a valuation in January 1948 of the net worth of Reynal, petitioner and Brace concluded that on the basis of current values Reynal's contracts with authors, its good will and petitioner's author relationships had a value of $50,000 and that the maximum amount which could be realized from these and the other assets listed in Reynal's balance sheet as of November 30, 1947, was $100,000. Penciled notations reflecting the foregoing were made on the balance sheet. On the basis of the foregoing, petitioner and Brace concluded that the notes of Reynal, totaling $145,000, held by petitioner were worthless to the extent of $45,000. On February 11, 1948, petitioner and Brace again evaluated the assets then remaining on the books of Reynal and concluded that the maximum amount that could be realized on the notes *270 on the sale of the firm's assets was approximately $85,000. They consequently determined on that date that the notes in question were further worthless to the extent of $15,000. On the same date, the terms of the purchase were agreed upon by the parties. On February 13, 1948, petitioner reduced from $100,000 to $85,000 the amount of his outstanding loans from the United States Trust Company, which he had obtained to make loans to Reynal. Under an agreement, dated March 9, 1948, Harcourt on that date purchased from petitioner all of the preferred and common stock of Reynal for $1 and purchased for $85,000 the two promissory notes, totaling $145,000 face amount, executed by Reynal. Petitioner thereupon endorsed the notes over to Harcourt which thereafter retained them until they were paid. In addition, petitioner was engaged as vice-president of Harcourt in charge of the trade department. By a supplemental agreement of the same date, Harcourt agreed to pay petitioner interest as follows with respect to the notes executed by Reynal: Interest on $45,000 to December 31, 1947; Interest on $100,000 to February 12, 1948; and Interest on $85,000 to March 9, 1948, and thereafter until *271 such time as the $85,000 was repaid, at the same rate charged petitioner by the United States Trust Company. The sale of Reynal to Harcourt was effected by the abovementioned transactions rather than by a sale by Reynal of its assets to Harcourt because the authors' contracts possessed by Reynal were not assignable. Final liquidation of Reynal was accomplished on April 30, 1949, through its merger with Harcourt. The sole business of petitioner throughout the period July 1, 1946, to March 9, 1948, was his employment with Reynal as president, treasurer and chairman of the board of directors. Opinion Petitioner contends that the notes in controversy were charged off as worthless to the extent of $60,000 in 1948 prior to their sale and that he is therefore entitled to a deduction in the mount of $60,000 as a business bad debt under the provisions of section 23(k)(1) of the Internal Revenue Code of 1939. Respondent maintains, among other things, that petitioner is not entitled to a partial bad debt deduction because the indebtedness in question was not incurred in the conduct of petitioner's trade or business and, further, because the transaction in question consituted a sale *272 of the promissory notes, resulting in a capital loss. A determination of the questions presented by the contentions of the parties turns solely on a decision as to whether or not the petitioner was engaged in a trade or business of his own in 1948 to which the indebtedness in question was proximately related. Robert Cluett, 3rd, 8 T.C. 1178; Charles G. Berwind, 20 T.C. 808, affd. 211 Fed. (2d) 575; Jan G. J. Boissevain, 17 T.C. 325. If the indebtedness in question was not proximately related to petitioner's trade or business at the time it became worthless, it is not deductible as a business bad debt. According to the testimony of petitioner, his sole business activity from July 1, 1946 to March 9, 1948, the date of the sale in question, was his employment with Reynal as president, treasurer and chairman of the board of directors. Petitioner's testimony further shows that from March 9, 1948, to the end of that year he was employed by Harcourt as vice-president. So far as appears, that was his sole business activity after March 9 to the end of the year. It is settled law that the business of a corporation is not the business *273 of its officers. Burnet v. Clark, 287 U.S. 410; Jan G. J. Boissevain, supra. Consequently, on the evidence presented, we are unable to find that during 1948 petitioner was engaged in a trade or business of his own to which the indebtedness in question was proximately related. In the event that petitioner had shown that he was engaged in a business of his own in 1948 to which the indebtedness was proximately related, we still would be unable to sustain petitioners' contention. On the record presented, the sale of the notes on March 9, 1948, was the first and only event during 1948 which gave rise to a recognizable loss. Since petitioner had held the notes for more than 6 months, the loss in question was a long-term capital loss. Estate of Clarence E. Lehr, 18 T.C. 373; Ralph Perkins, 41 B.T.A. 1225 affd. 125 Fed. (2d) 150. Decision will be entered for the respondent.