Roger W. Pope and Marjorie H. Pope v. Commissioner.
Pope v. Commissioner
Docket No. 53344.
United States Tax Court
T.C. Memo 1956-41; 1956 Tax Ct. Memo LEXIS 255; 15 T.C.M. (CCH) 181; T.C.M. (RIA) 56041; February 23, 1956
*255 Petitioner in 1949 sold some of his shares of stock in a corporation controlled by him to another corporation also controlled by him. Held: the sale did not lack economic reality and all the proceeds did not constitute a dividend to petitioner. John Wanamaker (Phila.) Trustees Common Stock, 11 T.C. 365, affd. 178 Fed. (2d) 10; and Emma Cramer, 20 T.C. 679, followed. Held further: in the absence of evidence to the contrary by respondent, evidence as to the book values of the issuing corporation's assets and its earning power accepted as establishing the fair market value of the corporation's stock at the time of its sale, and the proceeds were not taxable as a dividend under sections 22(a) and 115(a) of the Internal Revenue Code of 1939 and Regulations 111, Section 29.22(a)-1, to the extent of such fair market value. Edmund Burke, Esq., for the petitioners. Burton L. Williams, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $14,782.14 in the petitioners' income tax for 1949. The only issue for decision is whether the proceeds of the sale of certain shares of stock owned by Roger W. Pope in a corporation controlled by him to another corporation also controlled by him are taxable as long-term capital gain to the extent they are in excess of his cost basis or as a dividend. Findings of Fact Petitioners are husband and wife and reside in Swampscott, *257 Massachusetts. They filed a joint Federal income tax return for the calendar year 1949 with the collector of internal revenue for the district of Massachusetts on April 17, 1950. Petitioner Roger will be sometimes referred to herein as petitioner. In 1933 Roger and others organized the F. W. Webb Manufacturing Company as a Massachusetts corporation to engage in the plumbing and heating supplies wholesale business. The new corporation then purchased certain assets of the F. W. Webb Manufacturing Company, a New Jersey corporation, in which Roger did not own any stock. The original stockholders of the new corporation, in addition to petitioner, were four former employees of the old corporation and a lawyer. The issued and outstanding stock of the F. W. Webb Manufacturing Company (Mass.) consisted of 1,136 no par common shares owned as follows on November 17, 1949: Stockholder
No. of Shares Held
Roger W. Pope
Petitioner
709-1/6
P. L. Green
Original stockholder
190
William Wells
Manager of Salem store - en-
tered corporate employ 1944
80
Marjorie H. Pope
Petitioner and Roger's wife
50
J. M. Raftery
Original stockholder
39-4/6
Louise Pope
Petitioners' daughter
20
Eleanor Pope
Petitioners' daughter
20
John D. Pope
Petitioners' son
20
Paul Collins
Employee
6
E. W. Bancroft
Counsel in 1933
1-1/6
*258 In 1945 Roger and others organized the Johnson-Barker-Webb Corporation to engage in the wholesale plumbing supply business. It purchased the assets and took over the business of the Johnson-Barker Company, a New Hampshire corporation, in which Roger did not own any stock. The original stockholders of the Johnson-Barker-Webb Corporation were Roger, a lawyer named John Spring of Nashua, New Hampshire, the F. W. Webb Manufacturing Company, and P. L. Green, who was also a stockholder in the latter corporation. The authorized and outstanding stock of Johnson-Barker-Webb Corporation on November 18, 1949, consisted of 528 shares of no par common stock owned as follows: No. of
Stockholder
Shares Held
Roger W. Pope
467
Roger W. Pope, Trustee under irrevo-
cable trust f/b/o Louise, Eleanor and
John Pope
30
P. L. Green
25
F. W. Webb Mfg. Co.
5
John R. Spring
1
Roger purchased or acquired his shares of stock in the F. W. Webb Manufacturing Company as follows: No. of
Cost to Pet'r
Shares
per Share
When Purchased
505
$100.00
Prior to 1941
110
150.00
1941
94-1/6
Common stock dividend
in 1944
The amount of the stock dividend *259 was computed in the following manner: The amount of the stock dividend in dollars was first determined and this figure was divided by the number of shares outstanding and reconverted to a number of shares of stock. The number of shares of stock to be issued as a dividend was then allocated among the shareholders in accordance with their holdings. During all years through 1949 separate tax returns were filed for both of the new corporations and a Massachusetts excise tax return was filed for the Massachusetts corporation. On November 18, 1949, Roger transferred 83 shares of his 709 1/6 shares of stock in F. W. Webb Manufacturing Company to the Johnson-Barker-Webb Corporation, and received $25,000 from the latter in exchange therefor. The price paid for them by Johnson-Barker-Webb Corporation was based upon their estimated book value on the date of the transfer, which was set by Roger at $300 per share upon a consideration of the book value as of December 31, 1948, and the earnings of the corporation from that date until November 18, 1949. Just prior to the determination of this book value, Roger conferred with John R. Spring, a minority shareholder of Johnson-Barker-Webb Corporation *260 and that corporation's attorney. The 83 shares transferred by Roger all came from the shares purchased prior to 1941 at $100 a share. On December 31, 1949, the combined value of the capital and surplus accounts of the F. W. Webb Manufacturing Company, according to its books of account, was $336,880.43 or $296.50 per share for the 1,136 shares then issued and outstanding. With the value of the corporation's real estate adjusted to reflect its assessed value, the combined capital and surplus accounts on that date totaled $331,631.02 or $291.90 per share. The earnings of the corporation for the years 1945 through 1949, inclusive, before and after Federal income taxes, were as follows: Net Income
Net Income
Year
Before Taxes
After Taxes
1945
$ 11,709.37
$ 8,581.86
1946
67,718.88
42,645.97
1947
122,244.69
76,192.32
1948
107,083.43
66,671.64
1949
31,864.28
22,476.21
The State of Massachusetts imposes a tax on domestic corporations which includes as an element in its computation the fair value of the corporation's stock on the last day of the taxable year. Provision is made for the abatement of this tax in whole or in part. In 1950 the F. W. Webb *261 Manufacturing Company filed a Massachusetts corporate excise return for its taxable year ended December 31, 1949, prepared by its certified public accountant and signed by Roger as its treasurer. Later, an application for an abatement of $248.39 in the excise was filed on behalf of the corporation. The computation of the claim included the amount of $336,829 as the fair value of the corporation's capital stock on December 31, 1949. The abatement claim was granted in full. During 1949 Roger sold approximately 35 other securities and some real estate in addition to the 83 shares of stock of F. W. Webb Manufacturing Company with a total cost basis of $106,157.41 for a total consideration of $100,894.71. He did not have an investment counselor and the sale of these assets was prompted by the necessity for funds for a considerable investment which he was making in another line of business. Both the F. W. Webb Manufacturing Company and the Johnson-Barker-Webb Corporation paid virtually no dividends at any time because their earnings were being retained to permit their growth. The surplus accounts of these corporations on December 31, 1949, were as follows: F. W. Webb Manufacturing Com-
pany
$216,780.43
Johnson-Barker-Webb Corporation
101,440.99
*262 The 83 shares of F. W. Webb Manufacturing Company stock, sold by Roger to Johnson-Barker-Webb Corporation on November 18, 1949, had a fair market value on that date of $295 per share. The stipulation of facts is incorporated herein by this reference. Opinion KERN, Judge: The respondent contends that the transfer of Roger's 83 shares of stock in F. W. Webb Manufacturing Company, hereinafter referred to as Webb, to Johnson-Barker-Webb Corporation, hereinafter referred to as Johnson, on November 18, 1949, for $25,000 resulted in the receipt of a taxable dividend and was not a sale taxable at capital gain rates. He argues, first, that under the facts herein the socalled "sale" lacked economic reality and, second, that the petitioner has failed to prove the fair market value of the Webb shares so that all the proceeds are taxable as a dividend under Regulations 111, Section 29.22(a)-1. Under the first point, respondent argues that the transfer was merely a scheme to permit Roger to obtain cash from one of the corporations controlled by him at capital gain rates for use in a business investment unrelated to the activities of the two corporations. He points to the fact that the *263 transfer of the Webb stock to Johnson did not result in Roger's losing control of Webb and merely added the shares to the assets of Johnson already owned and controlled almost entirely by him. Thus, the "sale" did not deprive Roger of anything of value. If the facts of the instant case are not distinguishable from our prior decisions in John Wanamaker (Phila.) Trustees Common Stock, 11 T.C. 365, affd. (C.A. 3), 178 Fed. (2d) 10, and Emma Cramer, 20 T.C. 679, respondent asks that we reconsider and overrule these cases. In the Wanamaker case we held that section 115(g) of the Internal Revenue Code of 1939 was inapplicable where a subsidiary purchased some of the stock of its parent from the latter's controlling stockholder at a price which was the approximate book value of the shares in order to permit the shareholder, a trust, to make distributions to its beneficiaries. In the Cramer case we held that amounts received by stockholders from a controlled corporation for the transfer of their stock interests in other controlled corporations, at prices based upon the appraised liquidation values of the latter, were not taxable as dividends within *264 the meaning of sections 115(a) or 112(c)(2). The instant case presents basically the same situation as the Cramer case with the exception that the transfer price for Roger's stock was not fixed by appraisal. Both the Wanamaker and Cramer cases are not distinguishable in principle from the instant case. After the Wanamaker decision, section 115(g) was amended by the Revenue Act of 1950 "to cover indirect redemption of shares in a parent corporation through purchases by its subsidiaries." H. Rept. No. 2319, 81st Cong., 2d Sess., p. 53. The Senate agreed with the House provision designed to eliminate the loophole revealed by the Wanamaker case, but struck out of the House Bill a further provision which also extended section 115(g) to cases in which both the issuing corporation and the acquiring corporation were controlled directly or indirectly by the same interests "because in this case it is not clear that the effect is the same as a redemption of stock by the issuing corporation." S. Rept. No. 2375, 81st Cong., 2d Sess., pp. 42, 43. The House agreed to the Senate amendment eliminating the proposed extension of section 115(g) to transactions involving so-called "brother-sister" corporations *265 and limiting the change to parent-subsidiary situations. The amendment was made applicable only to amounts received after August 31, 1950. H. Rept. No. 3124, 81st Cong., 2d Sess., pp. 26, 27. Section 304 of the Internal Revenue Code of 1954 incorporated the substance of section 115(g)(2) of the Internal Revenue Code of 1939 with respect to the purchase by a subsidiary of its parent's stock and extended the principle to include cases of "brothersister" corporations. S. Rept. No. 1622, 83d Cong., 2d Sess., p. 239. The effective date of this section was June 22, 1954, Section 391. We have carefully reconsidered our decisions in the Wanamaker and Cramer cases, and we adhere to them. The fact that Congress on two occasions considered the very problem before us and enacted new legislation with prospective application only to the situations exemplified by these cases is persuasive that they stated existing law prior to the amendments to section 115(g) by the 1950 and 1954 Acts. See Mead Corporation v. Commissioner, (C.A. 3, 1940), 116 Fed. (2d) 187. The respondent's second point is that the distribution of $25,000 by Johnson to Roger is taxable as *266 a dividend under sections 22(a) and 115(a). We have previously held that section 115(a) alone is insufficient to make this transaction taxable. Emma Cramer, supra.Respondent's contention here, however, is apparently based on the following portion of Regulations 111, Section 29.22(a)-1: * * *
"If property is transferred by a corporation to a shareholder, for an amount less than its fair market value, regardless of whether the transfer is in the form of a sale or exchange such shareholder shall include in gross income the difference between the amount paid for the property and the amount of its fair market value to the extent that such difference is in the nature of a distribution of earnings or profits taxable as a dividend. * * *" We have previously held without citation of this Regulation that a purchase of securities by a corporation from its sole stockholder at a price in excess of the aggregate fair market values of such securities at the time of their transfer had the net effect of enriching the stockholder at the expense of his wholly-owned corporation, and that the excess so paid was taxable as a dividend. Jacob M. Kaplan, 21 T.C. 134. That *267 case is indistinguishable in principle from the instant case. The respondent claims that the petitioner has failed to establish the fair market value of the Webb shares sold by him to Johnson and hence has failed to rebut the presumption of correctness attaching to the respondent's determination that he received a taxable dividend of $25,000, the full amount of the proceeds, in 1949. While the evidence as to fair market value of the 83 shares of Webb stock on November 18, 1949, is sparse, it is sufficient to enable us to make a finding. The petitioner introduced Webb's 1950 Massachusetts excise return which sets forth a sheet based on its books of accounts as of December 31, 1949, and which also sets out the corporation's earnings for that year and for the 4 preceding years. The net book value of the corporation's assets on December 31, 1949, was approximately $296.50 per share. The average annual earnings for the previous 5 years were $68,125 before taxes and $43,515 after taxes, or $59.97 and $38.31, respectively, per share. The Webb stock was sold to Johnson for approximately $301.20 per share or at a price which was 5 times the average earnings before taxes, and slightly less *268 than 8 times the average annual earnings after taxes. The capitalization of the earnings of a mercantile business at such rates does not appear unduly large. Making some allowance for the corporation's earnings between November 18, 1949, and December 31, 1949, we have found as a fact from the earning power and the net book value in evidence that the fair market value of the Webb stock at the time of its sale to Johnson was $295 per share. The book values of Webb's assets and its earning power are some evidence of the fair market value of its stock and, in the absence of any evidence by the respondent to show that the figures are unreliable, we are entitled to base our finding as to fair market value thereon. B. F. Edwards, 39 B.T.A. 735; Ralph Perkins, 41 B.T.A. 1225, affd. (C.A. 6, 1942), 125 Fed. (2d) 150; Earl V. Perry, 22 T.C. 968; see also Benjamin E. May, 35 B.T.A. 84. The fact that the State of Massachusetts abated its excise on Webb in an amount which necessarily accepted the fair value of the capital stock at approximately the book value figure is also some evidence and persuasive that the book value approximated *269 the fair market value. See Williams v. Commissioner (C.A. 8, 1930), 44 Fed. (2d) 467; Anson Evans, et al., Trustees, 29 B.T.A. 710. We, therefore, hold that petitioner is taxable on the receipt of a dividend from Johnson to the extent of $515, the difference between the purchase price and the fair market value of the 83 Webb shares on November 18, 1949. The balance of the $25,000 payment represents the proceeds of a sale taxable to petitioner as long-term capital gains. During the hearing it became evident that due to the receipt of a stock dividend in 1944, an adjustment would be required in the cost basis of petitioner's stock. The briefs of the parties show that they have adopted conflicting methods of computing the new basis. We defer decision on this point until the parties have had an opportunity to reconsider their positions in a computation under Rule 50. Decision will be entered under Rule 50.