## UNITED STATES *v.* NEW YORK COFFEE AND SUGAR EXCHANGE, INC., ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 331. Argued November 16, 1923.—Decided January 28, 1924.

1. Sales of a commodity, upon an exchange, under contracts calling for actual delivery in the future but which in practice are cleared by the processes called "matching" and "ringing," serve useful

and legitimate purposes, and are legal when not abused for illegal ends. P. 619.

2. The fact that the facilities of such an exchange, and the influence of the prices there prevailing upon sales elsewhere, may have been used by persons, not identified, in a criminal conspiracy to cause a rise of market prices, is no basis for a suit under the Anti-Trust Law to enjoin the further operation of the exchange itself and its attendant clearing house, or for a mandatory injunction to reframe their rules. P. 620.

3. Provision of rules and regulations for the conduct of such exchanges to prevent future abuse, by others, of their lawful functions, is a legislative, and not a judicial, office. P. 621.

Affirmed.

APPEAL from a decree of the District Court dismissing a suit for an injunction, under the Anti-Trust Law.

*Mr. James A. Fowler,* Special Assistant to the Attorney General, and *Mr. Assistant to the Attorney General Seymour,* with whom *Mr. Attorney General Daugherty, Mr. Solicitor General Beck, Mr. Roger Shale, Mr. A. F. Myers* and *Mr. David A. L'Esperance,* Special Assistants to the Attorney General, were on the briefs, for the United States.

Nothing but futures are bought and sold on the Exchange, and there are practically no deliveries made pursuant to such transactions.

The by-laws and rules controlling the Exchange and Clearing Association are designed to promote speculative transactions and to prevent deliveries of sugar through the Exchange. And when contracts made upon the Exchange are read in the light of its by-laws and rules, it is apparent that an actual delivery is rarely, if ever, contemplated.

The evidence shows that the prices of sugar in the market, both for immediate and future delivery, are controlled entirely by the prices upon the Exchange, although there may be a slight difference between the " spot " price and the price of the nearest future.

Practically all of the contracts, if not every contract, on the Exchange, are unlawful and unenforceable under the rules laid down by this Court, and recognized by all courts as the law governing such transactions. *Irwin* v. *Williar,* 110 U. S. 499; *Clews* v. *Jamieson,* 182 U. S. 461; *Pearce* v. *Rice,* 142 U. S. 28.

In a case which involves a transaction, or even a series of transactions, between certain brokers on the Exchange, as were the facts in *Clews* v. *Jamieson, supra,* it may be difficult to prove that an actual delivery was not contemplated, and the presumption that a delivery was actually intended may not be overcome; but such presumption is absolutely destroyed when it is conceded that every contract during the day on the Exchange is of such character that no delivery could have been contemplated by either party in the making of any of them.

Now, if such be the law relating to contracts upon the Exchange when all of them are " hedging " transactions, *a fortiori* must the same rule apply when some of the contracts for the day are made by pure speculators, as described in the answer, and all the others are hedging contracts. The fact that an exceedingly small proportion, considerably less than 1 per cent., of the contracts are consummated by actual deliveries can not alter the situation.

The advances in prices of " spot " and raw sugar from February 1st to the date of the filing of the petition were very largely, if not entirely, the result of speculative operations on the Exchange; and were not justified, or caused, by the existing or prospective supply of, or demand for, sugar.

Counsel then discussed the functions of an exchange and its economic effect, and the views of economists; also legislation relating to exchanges.

Authorities relied upon by defendants—*Irwin* v. *Williar,* 110 U. S. 499; *Bibb* v. *Allen,* 149 U. S. 481; *Clews* v. *Jamieson,* 182 U. S. 461; *Bond* v. *Hume,* 243 U. S. 15;

*Spring* v. *James*, 137 App. Div. 110,—were distinguished upon the ground of the difference between an action between private individuals involving transactions on an exchange and an action by the Government, representing the public, attacking the general course of conduct of the exchange.

In *Board of Trade* v. *Christie Grain & Stock Co.*, 198 U. S. 236 (cf. *Board of Trade* v. *O'Dell Commission Co.*, 115 Fed. 574; *Board of Trade* v. *Donovan Commission Co.*, 121 Fed. 1012; *Board of Trade* v. *Kinsey Co.*, 130 Fed. 507,) the Court first draws a distinction between a contract to settle by paying differences at a specified time, and a contract where it is merely expected that it will be satisfied by a set-off, there being no definite understanding to that effect. But in the present case it is shown that all the contracts are made for the purpose of "hedging" or by speculators, and that all are intended to be settled by "rings" or "matching."

As supporting the Government's contentions, there were cited: *United States* v. *Standard Oil Co.*, 221 U. S. 1, 59–62; *American Column Co.* v. *United States*, 257 U. S. 377; *United States* v. *American Oil Co.*, 262 U. S. 371; *United States* v. *Patten*, 226 U. S. 525; *Chicago Board of Trade* v. *Olsen*, 262 U. S. 1; *Addyston Co.* v. *United States*, 175 U. S. 211, 241, 242.

*Mr. William Mason Smith* and *Mr. John W. Davis* for appellees.

The bill set out no case for relief under the statutes invoked.

The bill was properly dismissed as lacking in equity. No facts showing a conspiracy, combination or contract to restrain trade were alleged or proved. The allegations to that effect were mere conclusions.

The Government's charge that no economic cause existed for the advance in sugar prices was disproved.

Grave results would follow a forced closing of the Exchange, and the Government's purpose would undoubtedly be defeated thereby.

The decision of this Court in *Chicago Board of Trade* v. *Olsen,* 262 U. S. 1, is no precedent for the present suit.

No facts showing concerted action or collusion on the part of the defendants to enhance prices or curtail production or restrain trade are shown.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This was a petition filed by the United States in the District Court for the Southern District of New York against the New York Coffee and Sugar Exchange, the New York Coffee and Sugar Clearing Association, corporations of the State of New York, and their officers and directors, for an injunction against the maintenance of an alleged conspiracy in violation of the Anti-Trust Act of July 2, 1890, c. 647, 26 Stat. 209, and of its supplementary Act of August 27, 1894, c. 349, 28 Stat. 570, as amended February 12, 1913, c. 40, 37 Stat. 667. The proceeding was brought under the expediting provisions of the Act of February 11, 1903, c. 544, 32 Stat. 823, as amended June 25, 1910, c. 428, 36 Stat. 854. The Attorney General having duly filed a certificate that the case was of general public importance, notice of a motion for an interlocutory injunction was given by the petitioner. The corporate defendants filed an answer which by stipulation was made the answer of the individual defendants. By further stipulation the cause was submitted to final hearing before three Circuit Judges upon petition and answer and the affidavits which had been presented by both sides on the motion for a preliminary injunction. The petition was dismissed, and this is an appeal under § 2, c. 544, of the Act of February 11, 1903, 32 Stat. 823.

The sugar market of the New York Coffee and Sugar Exchange was not organized until the great war in 1914, when foreign sugar exchanges ceased to function. It was intended to afford a world exchange for the purchase and sale of sugar. It continued as an exchange until this country engaged in the war, when it was closed by government direction. Upon the coming of peace, it opened again and has been in operation ever since. The dealings are chiefly in raw sugars. The contracts made are for future delivery. There are no " wash " sales, i. e., merely bets upon the market in which it is understood between the parties that neither is bound to deliver or accept delivery. But it is true that the sugar is not delivered except in a very small percentage of the contracts. The contracts are settled by offsetting purchases against sales, i. e., by " matching " as it is called, or by " ringing." This is the same general method of settlement as that which prevails in grain sales for future delivery on the Chicago Board of Trade, and is described by this Court in *Board of Trade* v. *Christie Grain & Stock Co.,* 198 U. S. 236, 247, *et seq.* The Sugar Clearing Association, codefendant herein with the Exchange, though a separate corporation, is under the same general management as the Exchange and its function is to provide a clearing house in which such ringing settlements are made. About seventy-five per cent. of the transactions are thus cleared. Nearly all the rest are " matched " and only a tenth to a quarter of one per cent. of the contracts are settled by actual delivery under the rules of the Exchange. The prices at which raw sugar is sold elsewhere for immediate delivery, i. e., of " spot " sales, vary very much as the prices for future delivery vary on the Exchange. It is clear that the prices for futures have a direct relation to, and effect upon, the prices in " spot " sales. The prices of raw sugar that prevail in the Exchange are used as a basis for the prices of sugar in the markets of the world.

Cuba is the largest single source of raw sugar for the United States and its crop equals or exceeds the supply from all other sources, domestic or foreign.   The petition charges that the Exchange and the Clearing Association are machinery for the promotion of gambling, that though its contracts for futures on their face are for actual delivery, they really are not intended or expected by either party to result in delivery, that the Exchange rules discourage delivery, that when in fact actual delivery is sought, purchases are not made on the Exchange but elsewhere, that the Exchange thus puts in the hands of gamblers the means of influencing directly the prices of sugar to be delivered and thereby of obstructing and restraining its free flow in trade between Cuba and the United States and between the States.

The occasion for the suit was a violent fluctuation in the price of sugar futures and as a consequence in the price of spot sugars, during February, March and April of 1923.   The petition alleges that during this period there was no economic justification for such a sudden and excessive increase, but that, notwithstanding, raw sugar at New York, May delivery, increased $3.65 to $4.07 per cwt. between February 1st and February 8th, and thereafter gradually increased from day to day until April 16th, when the peak of $5.97 per cwt. was reached.   The effect upon refined sugar used by the consuming public was to increase its price for immediate delivery in New York from $6.70 per cwt. in February to $9.30 per cwt. in March and April.

The petition charges that all this was " the direct result of a combination and conspiracy between the New York Coffee and Sugar Exchange (Inc.), the New York Coffee and Sugar Clearing Association (Inc.), and the officers and members of those corporations and their clients or principals, who, by means of purported purchases and

sales of sugar, have sought to establish and have established artificial and unwarranted prices, not governed by the law of supply and demand, but based wholly on speculative dealings not involving the delivery of the quantities of sugar represented thereby, but altogether carried on for the purpose and with the effect of unduly enhancing the price of sugar to the enrichment of said defendants and their principals and to the detriment of the public."

The prayer is that the court adjudge that the by-laws, rules and regulations of the defendant corporations, in so far as they relate to sugar, and the concerted action of the individual defendants in carrying them out, show a combination and conspiracy in violation of federal anti-trust laws, and that the defendants and each of them be enjoined from maintaining and operating the Sugar Exchange and Clearing House, from publishing the prices of raw or refined sugar in Exchange transactions as purporting to be its market price, from attempting to establish it as such in *bona fide* dealing in actual sugar, and " from entering into or permitting to be entered into any transactions on said Exchange or elsewhere involving or purporting to involve the purchase, sale, and delivery of sugar, unless the person purporting to make such sale has in his possession or under his control a supply of sugar adequate to meet the requirements of such transaction, and the person purchasing or purporting to purchase shall in good faith intend to buy and pay for such sugar and accept delivery as soon as same can be made."

The answer of the corporate defendants denied all charges of combination and conspiracy to increase prices or to obstruct or restrain the free flow of commerce in sugar, gave the history of the organization of the two corporations, and alleged that they served a very useful purpose in stabilizing the price of sugar by furnishing a free market for this country and the world.

The evidence shows that the rules and organization of the Exchange and Clearing Association are very like those of the Chicago Board of Trade and similar Exchanges for the sales of commodities for future delivery. It is true that spot sales are not encouraged and that less actual deliveries take place in this Exchange than in some of the Exchanges for sales of other commodities, but actual deliveries are provided for in every contract and may be lawfully enforced by either party.

The usefulness and legality of sales for future delivery, and of furnishing an Exchange where under well-defined limitations and rules the business can be carried on, have been fully recognized by this Court in *Board of Trade* v. *Christie Grain & Stock Co.,* 198 U. S. 236, 246. Those who have studied the economic effect of such Exchanges for contracts for future deliveries generally agree that they stabilize prices in the long run instead of promoting their fluctuation. Those who deal in " futures " are divided into three classes: first, those who use them to hedge, i. e., to insure themselves against loss by unfavorable changes in price at the time of actual delivery of what they have to sell or buy in their business; second, legitimate capitalists who, exercising their judgment as to the conditions, purchase or sell for future delivery with a view to profit based on the law of supply and demand; and, third, gamblers or irresponsible speculators who buy or sell as upon the turn of a card. The machinery of such an Exchange has been at times made the means of promoting corners in the commodity dealt in by such manipulators and speculators, thereby restraining and obstructing foreign and interstate trade. In such instances, the manipulators subject themselves to prosecution and indictment under the Anti-Trust Act. *United States* v. *Patten,* 226 U. S. 525. But this is not to hold that such an Exchange with the facilities it affords for making contracts for future deliveries is itself a combina-

tion and conspiracy thus to restrain interstate and foreign trade.

There is not the slightest evidence adduced to show that the two corporate defendants or any of their officers or members entered into a combination or conspiracy to raise the price of sugar. The circumstances upon which the Government placed its case were a violent rise in the price of sugar without any economic justification or explanation, lasting two months or more and manifesting itself first in " futures " on the Exchange and afterwards in the price of refined sugar for immediate delivery. The defendants suggest that this was due to a popular misconstruction of the regular monthly report of the Department of Commerce as to a probable shortage in the supply of sugar during the year 1923, followed by a statement from a business house in Cuba, usually regarded as a reliable source of information, that the previous estimate of the amount of the next Cuban crop was too high by several hundred thousand tons. Whether these circumstances were sufficient to explain in full the violent rise in the price of sugar, we need not discuss. The Government case fails because there is no evidence to establish that the defendants produced or attempted to produce the disturbance of the market.

The mere fact that the defendants were operating the Sugar Exchange and Clearing Association, even if we concede that some persons, not identified, combining and conspiring with criminal intent, used the Exchange and Clearing Association to cause the rise in sugar prices,—concessions which there is no testimony to support,—furnishes no reason for enjoining defendants from continuing the Exchange or for a mandatory injunction to reframe the rules of the Exchange and the Clearing Association.

The Government contends that the prayer of the petition is justified by the decision of this Court in the case of *Chicago Board of Trade* v. *Olsen,* 262 U. S. 1. It has

no application.   We held there that Congress, having found that the sales of grain for future delivery on the Board of Trade were susceptible to speculation, manipulation and control affecting interstate consignments of grain, in such a way as to cause a direct burden on, and interference with, interstate commerce therein, had power to place such markets under federal supervision to. prevent such abuses.   But nothing in the case sustains the view that those promoting and operating such an Exchange are themselves imposing a burden or restraint upon interstate commerce for which they may be indicted under the Anti-Trust Act, or from continuing which they may be enjoined.   The Government in effect asks this Court to enforce rules and regulations for the conduct .of the Sugar Exchange which shall prevent the future abuse of its lawful functions.   This is legislative and beyond our power.

*The decree of the District. Court is affirmed.*