COMMISSIONER OF INTERNAL REVENUE v. COVINGTON et al.

COVINGTON et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 9806.

Circuit Court of Appeals, Fifth Circuit.

June 9, 1941.

Rehearing Denied July 17, 1941.

Joseph M. Jones, Sewall Key, and Miss Ellyne E. Strickland, Sp. Assts. to Atty. Gen., and Samuel O. Clark, Jr., Asst. Atty. Gen., for the Commissioner.

Carl J. Batter, of Washington, D. C., for taxpayers.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

The Board of Tax Appeals decided (1) that Commodity Futures Trading losses incurred in the years 1936 and 1937, were capital losses and subject to the $2,000 limitation of Section 117 (d), Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 875, and (2) that commissions paid in connection with such trades were deductible but only to the extent that they are attributable to sales. The taxpayer is here complaining of the first ruling, and both taxpayer and commissioner are here complaining of the second. The commissioner complains because any commissions were allowed, the taxpayer, because all were not.

The taxpayer's position is that the statute[1] defining capital assets does not include, but upon a proper construction of its terms, excludes, Commodity Futures therefrom, and that Commodity Futures losses are therefore not capital losses but ordinary gains or losses. This is his argument. To be a capital asset, two elements are necessary; they are (a) there must be property, (b) the property must be held by the taxpayer, and to be subject to the limitation contained in Sec. 117 (d) of the Act, a third element is necessary, that is, (1) there must be a sale or exchange unless the transaction falls within (e) or (f) of the Act, and it is not claimed that it does; and (2) not one but all three necessary elements are missing in trading in Commodity Futures, therefore losses from such trading are deductible in full, under Section 23 (e) (1) or (2) of the Revenue Act of 1936, and not as limited by Section 117 (d).

Pursued, his argument runs this way: The petitioner as a Futures trader does not own or acquire property. All that it does is to enter into executory contracts, looking to the future, to buy the property referred to in the contracts, in case the contracts are not closed out according to the custom of the exchanges on which it operates. It doesn't, by its dealing, become the owner of any property, it merely enters into executory contracts which are executed, not by transfer of property, but by closing them out at a profit or loss, under the rules of the exchange, without a sale or exchange of property being involved. Future trading on Commodity Exchanges, argues the petitioner, involves neither purchases in its initiation nor sales in its consummation. All that is accomplished by the public outcry on the floor of the exchange is the setting of the price and the determinaiton of the contracting parties. The highest bidders then contract at the price set for the future delivery of the commodity. Contracts closed out before delivery are not sold. A separate sales contract is made with the highest bidder and the clearing house of the exchange to which all contracts are transferred, extinguish offsetting contracts and makes a money settlement of the price difference. There is then neither the sale nor exchange of the commodity or of the contract. There is only the extinguishment of a contract to buy and a contract to sell, and a money settlement for the price difference. This, says the petitioner, is not a selling or buying of property. Speaking plainly, it is simply an arrangement or device by which gains or losses are chalked up and settled for, between speculators who have taken opposite positions in a rising and falling market.

[1] Sec. 117. "Capital Gains and Losses. * * * (b) Definition of capital assets. For the purposes of this title, 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. * * *

"(d) Limitation on capital losses. Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges."

■ It is difficult to see how, if petitioner is right in this naive reduction to fundamentals, of the transactions in which it has been engaged, its activities can be distinguished from mere wagering or to be equally naive, betting or gambling. But they are so distinguished in law and in business contemplation, and they are so distinguished, because implicit in the transactions is the agreement and understanding that actual purchases and sales, and not mere wagering transactions, are being carried on. Petitioner therefore finds himself in, to say the least of it, the ambiguous position of asserting, in order to sustain them, while the transactions are going on, that within the statutes and decisions of the various states and of the United States, he is not engaged in gambling or wagering transactions, but in the sale and purchase of property, and for income tax purposes after they are over, that he has not been so engaged, he has merely been making wagering contracts. The rules of the New York Produce Exchange provide that all offers to buy and sell shall be presumed to have been made in the following form.

"...... of the County of ...... State of ...... have this day ${\text{bought from} \atop \text{Sold to}}$ ...... and agreed to ${\text{receive from} \atop \text{deliver to}}$ ...... of the County of ...... State of ......, 60,-000 pounds of loose Bleachable Prime Summer Cotton Seed Oil, at a price of ...... cents and ...... hundredths cents per pound, in licensed bonded warehouse basis f. o. b. New York; deliverable between the first and last days of ...... inclusive; at seller's option. The oil dealt with herein shall be Prime Summer Yellow Cotton Seed Oil; shall be of American origin, and produced within the United States of America, and must be clear, free from water and settlings, sweet in flavor and odor, and when bleached as per Rule 101 of the Rules Governing the Chemistry Bureau, the color of the oil to be passed upon shall not be darker than the combined standard glasses .20 yellow, 2.5 red of Lovibond's color scale, and shall not contain more than one-quarter of one percent free fatty acids.

"This agreement is made subject to all the Bylaws, Rules and customs of the New York Produce Exchange."

■ Other commodity exchanges do business under substantially the same conditions. We think it quite clear that petitioner was engaged in the business of buying and selling commodities or rights in commodities,[2] using the machinery and provisions of the commodity exchange to do so, and that it is equally clear that the Board was right in holding that the losses he sustained were capital losses subject to the limitation of Sec. 117 (d) supra.

■ We think, however, that in the ruling allowing the deduction of commissions attributed to sales, the Board was wrong. Neuberger v. Commissioner, 2 Cir., 104 F.2d 649, on which it based this ruling, does indeed so hold. But we are unable to see the distinction as to deductibility which it and the Board following it, draw between commissions on sales and those on purchases. Helvering v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52, reversing Winmill v. Commissioner, 2 Cir., 93 F. 2d 494, holds flatly that commissions on purchases are not deductible as expenses, but must be added to cost. The court in the Neuberger case in holding that its Winmill decision was disapproved in the Supreme Court, only as it related to commissions on purchases and in reaffirming its decision in that case as to commissions on sales, draws, we think, a distinction without a difference.

■ The regulations of the Treasury Department have consistently provided, that deductions for commissions paid in the purchase and sale of securities by one who is not a dealer, are not deductible as business expenses, that commissions paid on purchases shall constitute a part of the cost of the securities, and commissions paid on sales shall be deducted from the selling price. The courts have applied a similar rule to commissions paid on purchases and sales of property other than securities. It is true that in Article 282, of Treasury Regulation 77, there was inserted the words hereinafter set out in italics: "Commissions paid in selling se-

---

[2] Cf. Meyer, The Law of Stock Brokers and Stock Exchanges, Vol. 1, pp. 200, 216; Board of Trade v. Christie Grain & Stock Co., 198 U.S. 236, 25 S. Ct. 637, 49 L.Ed. 1031; United States v. New York Coffee & Sugar Exchange,

263 U.S. 611, 44 S.Ct. 225, 68 L.Ed. 475; Hoffman Future Trading upon Organized Commodity Markets, 111; Valley Waste Mills v. Page, 5 Cir., 115 F.2d 466.

curities, *when such commissions are not an ordinary and necessary business expense,* are an offset against the selling price. * * *" But it is also true that it has been uniformly held that this exception applies only to dealers in securities and that this provision was made and applied where the details of accounting in the dealer's business made it impractical for him to match his selling commissions against each individual sale.[3]

Petitioner is not a dealer in securities, he is a mere trader. In Helvering v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 46, 83 L.Ed. 52, where the point decided it is true was with regard to Commissions on purchases, the court broadly declared, "There has been tacit, if not express judicial approval for the administrative treatment of commissions as an element of the cost of securities * * *". We find no warrant for a different rule where the commissions are for sales. Cf. Spreckels v. Commissioner, 9 Cir., 119 F.2d 667. To hold differently would be to add to the limitation of 117 (d), an exception in effect that when they are caused by the payment of selling commissions, capital losses may be taken though in excess of the $2,000 limited therein.

The order of the Board is affirmed on the taxpayer's and reversed on the commissioner's appeal, and the cause is remanded to the Board for re-determination in accordance herewith.

Affirmed in part, and reversed in part.

HOLMES, Circuit Judge (concurring).

There is no evidence that these were wagering contracts or gambling transactions, and the presumption is that they were not. There is no claim that they were hedges.

Conceding, arguendo, that the taxpayer merely entered into executory contracts, on margins, for the delivery of commodities at a future date which were terminated before the time therein named for delivery, such contracts were intangible property which are deemed to have a value the instant they are made; their subsequent value or lack of value depends upon the market price of the commodity at the time of valuation. These contracts are capable of ownership and of being transferred by act of the parties or by operation of law. They are capital assets within the meaning of Sec. 117 (b) and (d) of the Revenue Act of 1936; but a trader in commodities, on exchanges, does something more (and the taxpayer herein did more) than merely enter into executory contracts.

This record shows that all of these transactions involved futures contracts executed on exchanges governed by rules which are substantially in accord. In many cases, such contracts culminate in the delivery of the actual commodity, but for the most part those who sell on such exchanges subsequently buy an equal quantity of the same commodity for delivery in the same month in which they sold, making their offsetting purchases before the delivery month is reached. Their sales offset their previous purchases, and the need for actual delivery is avoided by accounting methods employed in exchange clearing houses, just as banks, which are clearing-house members, avoid the needless use of actual money in their daily settlements with each other. All of the contracts of this taxpayer were terminated in this manner without deliveries of the actual commodities, but the trading was in the commodity itself.

Transactions in commodity futures are commonly spoken of as purchases and sales of a specific commodity such as corn, wheat, or cotton, but the traders really acquire rights to the specific commodity rather than the commodity itself. These rights are intangible property which may appreciate or depreciate in value. They are capital assets held by the taxpayer (whether or not connected with his trade or business), but, unless they are hedges (which are in a class by themselves), they cannot be regarded as stock in trade or other property of a kind which would properly be included in the inventories of the taxpayer if on hand at the close of the taxable year. Neither are they property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

---

[3] G. C. M. 15430, XIV-2, Cum. Bull. 59. Buying commissions are a part of the cost of securities and are not deductible as ordinary and necessary business expenses. Selling commissions are an offset against the sale price and are not deductible as ordinary and necessary business expenses except in the case of a dealer in securities.

In Lyons Milling Co. v. Goffe & Carkener, 10 Cir., 46 F.2d 241, page 247, 83 A.L.R. 501, the court said: "A set-off is a method by which a contract to purchase is set off against a contract to sell without the formality of an exchange of warehouse receipts or other actual delivery and, in legal effect, is a delivery."

In Board of Trade v. Christie Grain & Stock Co., 198 U.S. 236, page 248, 25 S. Ct. 637, page 638, 49 L.Ed. 1031, the court said: "We must suppose that from the beginning, as now, if a member had a contract with another member to buy a certain amount of wheat at a certain time, and another to sell the same amount at the same time, it would be deemed unnecessary to exchange warehouse receipts. We must suppose that then as now, a settlement would be made by the payment of differences, after the analogy of a clearing house. This naturally would take place no less that the contracts were made in good faith, for actual delivery, since the result of actual delivery would be to leave the parties just where they were before. Set-off has all the effects of delivery."

In United States v. New York Coffee & Sugar Exchange, 263 U.S. 611, 619, 44 S.Ct. 225, 227, 68 L.Ed. 475, the court said: "Those who deal in 'futures' are divided into three classes: First, those who use them to hedge, i. e., to insure themselves against loss by unfavorable changes in price at the time of actual delivery of what they have to sell or buy in their business; second, legitimate capitalists, who, exercising their judgment as to the conditions, purchase or sell for future delivery with a view to profit based on the law of supply and demand; and, third, gamblers or irresponsible speculators, who buy or sell as upon the turn of a card."

As we have observed, there is no claim here that these contracts were hedges, and the presumption is that they were not wagering contracts.[1] The taxpayer, therefore, should be classified with those "legitimate capitalists, who, exercising their judgment as to the conditions, purchase or sell for future delivery with a view to profit based on the law of supply and demand."

For purposes of taxation it is immaterial whether this taxpayer was a trader in the actual commodities or in rights to the commodities. In either event his losses which resulted from trading in commodity futures contracts were properly classified as capital losses subject to the limitations of Sec. 117 (d) of the Revenue Act of 1936. The substance of the transaction is the same whether the taxpayer acquires tangible or intangible property. It was the primary purpose of Congress in imposing the capital loss limitation to prevent such trading losses from wiping out all ordinary income for tax purposes. H. Rep. No. 704, 73d. Cong., 2d Sess., pp. 30, 31.

---

[1] Wagering losses are allowed only to the extent of the gains from such transactions, Sec. 23(g); whereas, capital losses are allowed to the extent of $2,000 plus the gains from such sales or exchanges, Sec. 117(d).