Glen A. **JORDAN** and Virginia
Jordan, Plaintiffs,

v.

**UNITED STATES** of America,
Defendant.

Civ. No. HS 70-C-44.

United States District Court,
W. D. Arkansas,
Hot Springs Division.

May 25, 1972.

W. Dane Clay (Rose, Barron, Nash, Williamson, Carroll & Clay), Little Rock, Ark., for plaintiffs.

Ben A. Douglas, Atty. in Charge, Tax Div., Dept. of Justice, Dallas, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

OREN HARRIS, Chief Judge.

Prior to the trial of this case, defendant filed a motion for partial summary judgment requesting the Court for entry of an order declaring all losses realized by plaintiffs during 1969 from speculative trading in commodity futures contracts to be capital losses, rather than losses incurred in the carrying on of a trade or business. Plaintiffs' counsel opposed this motion, maintaining that there was a genuine dispute as to a material fact with regard to this issue. The Court thereupon denied defendant's motion for partial summary judgment.

At the close of all of the evidence in the trial of this case on May 5, 1972, defendant's counsel moved the Court, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, for entry of an order directing a verdict for the defendant on the issue previously raised in the defendant's motion for partial summary judgment. After considering the pleadings, the stipulation filed herein, the testimony of the witnesses, the exhibits introduced into evidence, and the oral arguments of counsel, the Court makes the following findings of fact and conclusions of law with regard to defendant's motion for a directed verdict.

## FINDINGS OF FACT

1. Plaintiff[1] became interested in the trading of commodity futures contracts in June or July of 1969. During the last six months of 1969, Mr. Jordan made weekly trips between Hot Springs, Arkansas, and Chicago, Illinois, to actively engage in the trading of commodity futures contracts on the Chicago Mercantile Exchange.

2. Mr. Jordan placed his orders to buy and sell commodity futures contracts through Heinhold & Co., a Chicago commodity broker which was a member of the Exchange. Mr. Jordan was an active trader who bought and sold as high as fifty (50) contracts per day.

3. Plaintiff paid Heinhold & Co. a commission of $36 on the purchase and sale of each contract. Heinhold & Co. in turn, split a portion of this commission with the pit broker and the Exchange's clearing house.

4. Mr. Jordan admitted on deposition and at the trial herein that he intended to speculate in the commodity futures market for the purpose of making a profit for himself, and not for the purpose of hedging or taking delivery on any of these contracts. In fact, he never took delivery of any of the commodities, his contracts being cancelled prior to the delivery date.

5. Commodity futures contracts that were purchased by Mr. Jordan were for his own personal investment and were not held for resale to others.

6. Investing in commodity futures contracts proved quite financially unrewarding for Mr. Jordan. In fact, he suffered a net loss of $70,969.50 from his trading activities during that year. In addition, he paid Heinhold & Co. a total of $91,944 in commissions for buying and selling these contracts.

7. He reported these amounts, along with other expenses, on Schedule C of his 1969 income tax return as a loss from a business or profession. He stated on this return that his principal business activity was being an "investor" in commodity futures. For income tax purposes, he reported a net loss for the year 1969, and applied for a tentative net operating loss carryback to the year 1966. This carryback was allowed by the Internal Revenue Service and a refund was paid to him. Subsequently, the Internal Revenue Service audited Mr. Jordan's 1969 income tax return and determined that he had erroneously reported the losses suffered and commissions paid in the commodity futures contract trading, since they constituted capital expenditures and capital losses, rather than losses from a trade or business.

8. Accordingly, the amount of the net operating loss carryback applicable to the year 1966 was reduced and additional taxes and interest were assessed against and collected from Mr. Jordan. Thereafter, a timely claim for refund was filed with and denied by the Internal Revenue Service, and this action was then timely instituted.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1346(a) (1) and venue is proper pursuant to 28 U.S.C. § 1402(a) (1).

2. Commodity futures contracts are "capital assets" in the hands of an investor, unless they are held as stock in trade primarily for sale to customers in the ordinary course of business. On the admitted facts, Mr. Jordan was a trader, not a dealer, in commodity futures contract, and, as such, does not come within the exception provided by Section 1221 of the Internal Revenue Code of 1954. Accordingly, his net loss of $70,969.50 from the trading in commodity futures contracts during the year 1969 must be classified as a loss incurred from the sale of capital assets. Commissioner of Internal Revenue v.

[1]. Since Virginia Jordan is a party to this action only because she filed a joint return with Glen A. Jordan in the year 1966, Mr. Jordan hereinafter will be referred to in the singular as plaintiff.

Covington, 120 F.2d 768 (C.A. 5, 1941), cert. denied, 315 U.S. 822, 62 S.Ct. 912, 86 L.Ed. 1219 (1942); Higgins v. Commissioner of Internal Revenue, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783 (1941); City Bank Farmers Trust Co. v. Helvering, 313 U.S. 121, 61 S.Ct. 896, 85 L.Ed. 1227 (1941); 3B Mertens, Law of Federal Income Taxation, Sec. 22.14; 5 Mertens, Law of Federal Income Taxation, Sec. 28.31.

■ 3. The total amount plaintiff paid Heinhold & Co. during the year 1969, i. e., $91,944, represents commissions paid by plaintiff for either the purchase or sale of these capital assets. Accordingly, the commissions are not currently deductible but, instead, should be added to or deducted from plaintiff's basis in the capital asset (commodity futures contract) when determining the amount of capital gain or loss realized by plaintiff upon disposition of each of the contracts. In this case, the $91,944 must be treated as increasing plaintiff's net capital loss for the year 1969. Helvering v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52 (1938); Spreckels v. Helvering, 315 U.S. 626, 62 S.Ct. 777, 86 L.Ed. 1073 (1942); 4A Mertens, Law of Federal Income Taxation, Sec. 25.08.

4. This Court concludes that the expenditures in question represent losses realized from the disposition of capital assets; therefore, these amounts are subject to the limitation of Section 172(d) (2) (A) of the Internal Revenue Code of 1954 in calculating plaintiff's net operating loss for the year 1969.

5. On the evidence, it is clear that defendant is entitled to judgment as a matter of law as respects the issue under discussion.

6. Defendant's counsel is directed to prepare, and submit to plaintiff's counsel for approval, a judgment reflecting the Court's decision on this issue, as well as the verdict returned by the jury with regard to the other issues in this case.