T.C. Memo. 2009-250

UNITED STATES TAX COURT

HARVEY S. AND WILLYCE BARR, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8705-08.                    Filed November 3, 2009.

Harvey S. Barr, for petitioners.

Steven N. Balahtsis, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  Respondent determined a $39,608 deficiency
in petitioners' 2005 Federal income tax and a $7,922 accuracy-
related penalty under section 6662(a).[1]  After a concession by

_____

    [1] Unless otherwise indicated, all section references are to
the Internal Revenue Code (Code) in effect for the year in issue.

petitioners,[2] the issues for decision are: (1) Whether petitioners recognize ordinary income or capital gain from the surrender of a life insurance policy; and (2) whether petitioners are liable for the section 6662(a) penalty. We hold that petitioners' gain is ordinary income. We hold further that petitioners are liable for the accuracy-related penalty.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The first stipulation of facts, the second stipulation of facts, and the attached exhibits are incorporated herein by this reference. Petitioners resided in New York at the time they filed their petition.

Harvey S. Barr (petitioner) has been an attorney since 1964 and currently is a partner at the law firm Barr, Post & Associates PLLC. Petitioner specializes in complex commercial transactions and bankruptcy law and is admitted to practice before the U.S. Tax Court, several U.S. District Courts, the U.S. Court of Appeals for the Second Circuit, and the Supreme Court of the United States. Willyce Barr is petitioner's wife.

---

[2] Petitioners concede a $304.20 dividend from the life insurance policy shown on Form 1099-DIV, Dividends and Distributions, should be included in their gross income and treated as ordinary income.

Petitioner's mother, Lillian Barr (Ms. Barr), is a retired schoolteacher and currently resides in New York. She taught in Arizona, where she lived from the mid-1960s until 2006.

In 1980 Ms. Barr wanted to purchase a life insurance policy to help her children pay the anticipated estate tax liability after her passing. Petitioner convinced Ms. Barr to meet and discuss the issue with Jack Tilden of New England Mutual Life Insurance Co. in New York (New England Mutual), with whom petitioner shared office space. Ms. Barr agreed, and she and petitioner met with Mr. Tilden.

On December 13, 1980, New England Mutual issued a life insurance policy (the policy) insuring the life of Ms. Barr. The policy was a whole life policy with a face amount of $200,000. It was not an annuity. Petitioner and his sister, Susan Roe (Ms. Roe), were coowners and beneficiaries of the policy. Under the terms of the policy all communications including premium notices were sent to petitioner's Spring Valley, New York, address.

The annual premium due under the policy was $8,929. For the first 8 or 9 years Ms. Barr indirectly paid the premiums by gifting half of the amount to petitioner and half to Ms. Roe. Petitioner and Ms. Roe then paid the premiums directly. No additional payments were made by petitioner, Ms. Roe, or Ms. Barr after the first 8 or 9 years. Thereafter, the policy borrowed against itself to pay the premiums; i.e., premiums were

automatically paid from dividend accumulations and loans against the cash value of the policy (policy loans).  Other than automatic policy loans used to pay the premiums, no one ever borrowed against the policy.

By 2005 the policy was held by New England Financial, a Metropolitan Life Insurance Co. (MetLife) affiliate.  On July 25, 2005, New England Financial sent a letter to petitioner explaining the tax consequences of the policy along with a statement of gain.  The letter stated in pertinent part:

> According to federal tax law, a policy contains taxable gain to the extent that its cash value (including loaned cash value) exceeds its Total Net Investment.

> Generally, gain must be recognized as taxable income to the extent any cash received or loan extinguished exceeds Total Net Investment. * * * We are required to report any taxable income to the Internal Revenue Service on Form 1099-R.

> You may wish to consult with your tax advisor if you have any doubt concerning the tax treatment of this contract.

New England Financial provided a second statement of gain to petitioners dated September 13, 2005.  According to the statement of gain, the net investment in the policy at the time was $225,390.14, the total cash value was $361,353.58, the total indebtedness was $354,399.25, and the taxable gain was $135,963.44.

On October 10, 2005, New England Financial sent a letter to petitioner notifying him that the policy was in overloan.[3] In order to continue the policy in force petitioner was required to pay both the overloan amount, $1,541, and the premiums due at the time, $2,286.38. The letter included the following language: "Should you allow the Policy to terminate through failure to pay the overloan amount, New England Financial is required by Federal law to report any taxable gain to the Internal Revenue Service."

Petitioner reviewed one or more of the letters received from New England Financial in 2005 and discussed their contents with Ms. Barr. They decided the policy was no longer necessary and allowed it to terminate. Petitioner surrendered the policy effective December 20, 2005. He was the sole owner and beneficiary at the time.[4]

In 2005 petitioner received and cashed a check from MetLife for $11,648.33 as well as a check for a $304.20 dividend. In January 2006 petitioner received a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., from MetLife showing a gross

---

[3] The letter was mistakenly addressed to Harvey S. Roe rather than Harvey S. Barr. We assume this was a clerical error as the letter was also sent to the attention of petitioner's sister, Susan Roe.

[4] At some point before termination Ms. Roe became ill and transferred her ownership interest to petitioner. The exact date petitioner became the sole owner is unknown.

distribution and taxable amount of $135,963.44 for 2005.

Petitioner also received a Form 1099-DIV showing a $304.20

taxable dividend from the surrender of the policy.

Petitioners timely filed their joint Federal income tax

return for 2005. Petitioners did not include either the

$135,963.44 shown on Form 1099-R or the $304.20 shown on Form

1099-DIV in their gross income reported on their return.[5]

OPINION

Amount Included in Gross Income

Gross income includes all income from whatever source

derived, including income from life insurance contracts. Sec.

61(a)(10). Any amount received upon the surrender of a life

insurance contract which is not received as an annuity is

specifically included in gross income to the extent that it, when

added to amounts previously received under the contract and

excluded from gross income, exceeds the investment in the

contract.[6] Sec. 72(e)(5)(A), (C); sec. 1.72-11(d)(1), Income Tax

Regs.

---

[5] The income also was not reported on any other taxpayer's
Federal income tax return.

[6] This rule applies if sec. 72(e)(2)(A) does not apply.
Sec. 72(e)(2)(A) refers to amounts received on or after the
annuity starting date and thus does not apply under the facts of
this case. Sec. 72(e)(5) also supersedes the application of sec.
72(e)(2)(B) and (4)(A) to any amount received under the insurance
contract.

When the policy terminated, petitioner received a net distribution of $11,648.33. This amount represents the total cash value, $361,353.58, plus a terminal dividend, $4,694, less $354,399.25 which was withheld to repay the outstanding policy loan balance. The satisfaction of the loans had the effect of a pro tanto payment of the policy proceeds to petitioner and constituted income to him at that time. See Atwood v. Commissioner, T.C. Memo. 1999-61. Thus, petitioner constructively received the policy's cash value of $361,353.58 without reduction for outstanding loans upon surrender. Petitioner's net investment at the time of surrender was $225,390.14. Accordingly, despite receiving a check for only $11,648.33, petitioner is taxable under section 72(e) on the $135,963.44 gross distribution MetLife reported to the IRS on Form 1099-R. See id.; cf. Dean v. Commissioner, T.C. Memo. 1993-226 (holding policy loan remaining unpaid when an annuity contract is terminated constitutes taxable income at that time).

Character of Gain Recognized

To recognize a capital gain or loss, petitioner must have engaged in a "sale or exchange" of a capital asset. Sec. 1222(1) through (4); Nahey v. Commissioner, 111 T.C. 256, 262 (1998) affd. 196 F.3d 866 (7th Cir. 1999). Though the Code does not define what is a sale or exchange, the terms "sale" and "exchange" are given their ordinary meaning. Helvering v.

William Flaccus Oak Leather Co., 313 U.S. 247, 249 (1941).
Generally, the lapse, cancellation, surrender, or termination of
a contract does not equate to a sale or exchange.[7] Wolff v.
Commissioner, 148 F.3d 186, 190 (2d Cir. 1998), revg. Estate of
Israel v. Commissioner, 108 T.C. 208 (1997).

The surrender of an insurance policy is not a "sale or
exchange" of a capital asset and thus does not result in capital
gain. See Hellman v. Commissioner, 33 B.T.A. 901, 902 (1936)
(holding the phrase 'sale or exchange' does not include the
surrender of a life insurance contract); see also Perkins v.
Commissioner, 41 B.T.A. 1225, 1228-1229 (1940), affd. 125 F.2d
150 (6th Cir. 1942); Chapin v. McGowan, 271 F.2d 856, 858 (2d
Cir. 1959); Blum v. Higgins, 150 F.2d 471, 474 (2d Cir. 1945);
First Natl. Bank of Kansas City v. Commissioner, 309 F.2d 587,
589 (8th Cir. 1962), affg. Estate of Katz v. Commissioner, T.C.
Memo. 1961-270; Gallun v. Commissioner, 327 F.2d 809 (7th Cir.
1964), affg. T.C. Memo. 1963-167; Avery v. Commissioner, 111 F.2d
19, 23 (9th Cir. 1940); Bodine v. Commissioner, 103 F.2d 982, 987
(3d Cir. 1939) ("it is entirely clear that the sums received by

---

[7] Petitioners do not argue and we do not decide whether
sec. 1234A applies to these facts. That section applies to
property acquired or positions established after June 23, 1981.
Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 508(a), 95
Stat. 333; see also Wolff v. Commissioner, 148 F.3d 186 (2d Cir.
1998), revg. Estate of Israel v. Commissioner, 108 T.C. 208
(1997). The policy was issued Dec. 13, 1980.

the taxpayer from the insurance company were not received by virtue of the sale or exchange of capital assets").

Petitioners acknowledge the legal precedent; i.e., gain recognized from the surrender of a life insurance policy receives ordinary income treatment.  Nevertheless, petitioners argue that the facts here are so exceptional as to require capital gain treatment.  To support this position, petitioner cites Commissioner v. Phillips, 275 F.2d 33, 36 n.3 (4th Cir. 1960), revg. 30 T.C. 866 (1958), which states:

> On reargument, counsel for the Commissioner conceded that there may be exceptional circumstances requiring a modification of this rule [ordinary income treatment].  For example, if a policyholder had an amount receivable thereunder which was in excess of his cost, but policyholder was afflicted with a disease which would result in his death in the near future, he could, if in need of cash, assign his policy for an amount in excess of that receivable under the policy and, as to such excess, treat the same as a capital gain.

Petitioner did not assign his policy.  Nothing about the policy or the manner in which it was surrendered is exceptional.

Finally, petitioner argues that, despite the legal precedent, "maybe it's time for a change in the law."  We need not decide the merits of this argument.  It should be raised before Congress, not the Tax Court.

The surrender of the life insurance policy did not constitute the sale or exchange of a capital asset.  Accordingly, we find the resultant gain is ordinary income and sustain respondent's determination.

Accuracy-Related Penalty

Section 7491(c) provides that the Commissioner bears the burden of production with respect to the liability of any individual for additions to tax and penalties. "The Commissioner's burden of production under section 7491(c) is to produce evidence that it is appropriate to impose the relevant penalty, addition to tax, or additional amount". Swain v. Commissioner, 118 T.C. 358, 363 (2002); see Higbee v. Commissioner, 116 T.C. 438, 446 (2001). The Commissioner, however, does not have the obligation to introduce evidence regarding reasonable cause or substantial authority. Higbee v. Commissioner, supra at 446-447. The taxpayer bears the burden of proof with regard to those issues. Once the Commissioner has met his burden of production, the taxpayer must come forward with evidence sufficient to persuade a Court that the Commissioner's determination is incorrect. Id.

Pursuant to section 6662(a), a taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax (1) attributable to a substantial understatement of income tax[8] or (2) due to negligence or disregard of rules or regulations. See sec. 6662(b). A substantial understatement of income tax is

---

[8] Understatement means the excess of the amount of the tax required to be shown on the return over the amount of the tax imposed which is shown on the return, reduced by any rebate. Sec. 6662(d)(2)(A).

defined as an understatement of tax that exceeds the greater of 10 percent of the tax required to be shown on the tax return or $5,000. See sec. 6662(d)(1)(A). The understatement is reduced to the extent that the taxpayer has (1) adequately disclosed his or her position and has a reasonable basis for such position or (2) has substantial authority for the tax treatment of the item. See sec. 6662(d)(2)(B). In addition, section 6662(c) defines "negligence" as any failure to make a reasonable attempt to comply with the provisions of the Code, and "disregard" means any careless, reckless, or intentional disregard. Negligence is strongly indicated where a taxpayer fails to include on an income tax return an amount of income shown on an information return, as defined in section 6724(d)(1). Sec. 1.6662-3(b)(1)(i), Income Tax Regs.

Whether otherwise applied because of a substantial understatement of income tax or negligence or disregard of rules or regulations, the accuracy-related penalty is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. See sec. 6664(c)(1). The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Relevant factors include the taxpayer's efforts to assess his proper tax liability, including the taxpayer's reasonable and

good faith reliance on the advice of a professional such as an accountant.  See id.  Further, an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer may indicate reasonable cause and good faith.  See Remy v. Commissioner, T.C. Memo. 1997-72.

For the 2005 tax year respondent determined that petitioners are liable for an accuracy-related penalty attributable to a substantial understatement of income tax or, in the alternative, due to negligence or disregard of rules or regulations.  With regard to the substantial understatement of income tax, respondent has met his burden of production under section 7491(c).  The tax required to be shown on petitioners' return is $59,209.  The deficiency (or understatement), $39,608, exceeds the greater of 10 percent of the amount required to be shown, $5,921, and $5,000.  Petitioners did not offer any authority for not reporting the income from the surrender of the policy on their return.  Consequently, we conclude that respondent has met his burden of production for his determination of the accuracy-related penalty based on substantial understatement of income tax.  Additionally, because petitioners failed to include the amount of income shown on Form 1099-R on their return, respondent has met his burden of production with regard to negligence.

Petitioners have failed to meet their burden of proving that they acted with reasonable cause and in good faith. Despite being the owner and beneficiary of the policy and receiving numerous letters and statements informing him of the tax consequences of the policy in general and upon surrender, petitioner argues that he was unaware that the gain on the policy upon surrender was taxable to him. He claims he immediately forwarded all mail related to the policy, including Form 1099-R, to Ms. Barr and that he has no recollection of ever seeing Form 1099-R. Petitioner testified that he believed Ms. Barr was responsible for any tax obligations arising from the policy and he was unaware that she had not taken care of her own tax liability. These claims, to the extent they are relevant, do not constitute reasonable cause.

Petitioner is an experienced attorney admitted to practice before the Tax Court. Petitioner's testimony that he called Ms. Barr to discuss letters and statements he received in 2005 is contradictory to his testimony that he automatically forwarded all mail to Ms. Barr without opening it. He received a check for $11,648.33, which he did not forward to Ms. Barr but deposited into a bank account. Even if petitioner forwarded Form 1099-R to his mother without viewing it, he is not excused. Negligence does not require a bad intent or a willful act. Petitioner knew, or should have known, that because he was the owner and

beneficiary of the policy, any proceeds paid out or gain recognized would be taxable to him.  Petitioner's failure to report income shown on Form 1099-R was not on account of reasonable cause and good faith.

We therefore sustain respondent's determination that petitioners are liable for the accuracy-related penalty on the underpayment associated with petitioners' failure to report taxable income from the surrender of the policy discussed above.

## Conclusion

Based on the foregoing, petitioners recognized $135,963.44 of ordinary income in 2005 from the surrender of a life insurance policy.  Petitioners also are liable for the accuracy-related penalty.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

Decision will be entered

for respondent.